UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN WIGELL,

                             Plaintiff,

            v.                                        6:06-CV-1009

SAMUEL G. NAPPI; ALLIANCE ENERGY
GROUP, LLC; ALLIANCE ENERGY NEW
YORK, LLC; ALLIANCE ENERGY
MARKETING, LLC; and SITHE ENERGIES, INC.,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HANCOCK & ESTABROOK, LLP<br>Attorneys for Plaintiff<br>1500 MONY Tower I<br>Syracuse, New York 13221 | JOHN T. McCANN, ESQ.<br>TYLER BRASS, ESQ. |
| HISCOCK & BARCLAY, LLP<br>Attorneys for Defendants Samuel G. Nappi,<br>  Alliance Energy Group, LLC, Alliance Energy New<br>  York, LLC, and Alliance Energy Marketing, LLC<br>One Park Place<br>300 South State Street<br>Syracuse, New York 13202-2078 | CHRISTOPHER J. HARRIGAN, ESQ. |
| TROUTMAN SANDERS LLP<br>Attorneys for Defendants Samuel G. Nappi,<br>  Alliance Energy Group, LLC, Alliance Energy New<br>  York, LLC, and Alliance Energy Marketing, LLC<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174 | STEPHEN G. RINEHART, ESQ. |
| MENTER, RUDIN & TRIVELPIECE, PC<br>Attorneys for Defendant Sithe Energies, Inc.<br>Suite 200<br>308 Maltbie Street<br>Syracuse, New York 13204-1498 | JULIAN B. MODESTI, ESQ. |

DAVID N. HURD
United States District Judge

# MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Kevin Wigell ("plaintiff" or "Wigell") brings this action against Alliance Energy Group, LLC, and its wholly-owned subsidiaries Alliance Energy New York, LLC and Alliance Energy Marketing, LLC (collectively "Alliance"), Samuel Nappi ("Nappi"), and Sithe Energies, Inc. ("Sithe"). Plaintiff alleges common law breach of contract (first, second and fifth causes of action), violation of New York State Labor Law § 190(1) (third cause of action), and common law fraud (fourth cause of action). Plaintiff filed this action in New York State Supreme Court, Oneida County. Defendants removed it to federal district court under 28 U.S.C. § 1331 on the ground that plaintiff's claims as alleged against Alliance and Nappi are federal claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.

Defendants Alliance and Nappi move to dismiss plaintiff's claims against them under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Oral argument was heard on December 8, 2006, in Utica, New York. Separately, Sithe moves to dismiss under Rule 12(b)(6) as well. Oral argument with respect to that motion was heard on March 9, 2007, in Utica, New York. Decision on both motions was reserved.

## II. FACTS

For nearly fifteen years, plaintiff worked as a plant manager for Sithe at its power plants ("plants") in Batavia and Sherrill, New York. On August 4, 2005, Sithe and Alliance entered into a purchase and sale agreement ("purchase agreement") whereby Alliance would

acquire ownership of the plants. (Modesti Aff. Ex. A at 1, 5.) In September 2005, Sithe held a meeting for its employees to discuss the effect of the sale on their jobs. Plaintiff attended the meeting and alleges that Sithe officials stated that current employees would be able to "retain their jobs following the sale and that they would be guaranteed their salaries for one (1) year." (Compl. ¶ 64.)

In fact, section 5.7 of the purchase agreement provided that:

any Employee terminated without cause, or resigning as a result of a material change in the terms of employment [before the first anniversary of the closing] shall be entitled to a severance payment equivalent to the product of one month of salary times the number of full or partial months remaining from the date of such termination or resignation until the [first anniversary of the sale's closing].

(Modesti Aff. Ex. A at 17.)

The term "material change in employment" was not among the defined terms in the purchase agreement.[1]

At another September 2005 meeting for Sithe employees that plaintiff attended, defendant Nappi reiterated verbally these general terms. Identifying himself as representing Alliance, Nappi told plaintiff and his fellow employees that if they accepted offers to work for Alliance they would be guaranteed employment for one year, and, if Alliance terminated them prior to the end of the one year, they would be paid severance for any remaining portion of that year.

Alliance formalized its offer of employment to plaintiff by issuing him an offer letter on October 17, 2005 ("First Letter"). In that letter, Alliance informed plaintiff that the transfer

---

[1] The purchase agreement's "Certain Defined Terms" section contained sixty-four defined terms, and it went on for nearly four pages.

of ownership would likely take place on November 1, 2005.  It set forth plaintiff's job title, his salary and benefits, and that employment would be at will.  It also stated that if he was terminated without cause or resigned due to a material change in the terms of his employment within one year of the change in ownership, he would be entitled to one month's pay for each full or partial month remaining from the termination date to the one year anniversary of the sale.  While the letter defined certain terms, including "Start Date" and "Plants," "material change in the terms of . . . employment" was not a defined term.  (Modesti Aff. Ex. B at 1-2.)  The letter did not indicate that any of the promises made were subject to further definition, or that the letter incorporated any other Alliance policies or plans.

On October 29, 2005, plaintiff received a new offer letter ("Second Letter") from Alliance.  A cover letter was attached stating that due to an "inadvertent error" the previous letter had incorrectly stated that plaintiff would be employed by Alliance's wholly-owned subsidiary Alliance Energy New York, LLC.  (Modesti Aff. Ex. B at 5.)  It stated that plaintiff's new employer would in fact, be Alliance Energy Marketing, LLC, another of Alliance's wholly-owned subsidiaries.

The revised offer letter was virtually identical to the First Letter.  The only material differences were the change in plaintiff's employer, and that the new offer letter contained a salary that was Two-thousand Dollars less than had been previously offered.  The paragraph on severance remained unchanged.  By its terms, the Second Letter superceded and replaced the First Letter.  Plaintiff executed the Second Letter on November 2, 2005.

On November 1, 2005, Alliance put into effect its "Severance Pay Plan and Summary Plan Description" ("Plan").  It defined a "Material Change in the Terms of Employment" as a reduction of an employees base pay rate by 5% or more, but provided that

a temporary lay off "will not constitute a reduction" in an employee's base pay rate. (Harrigan Aff. Ex. A at 3.)

On December 16, 2005, Alliance informed plaintiff by letter that he would be temporarily laid off. In the letter, Alliance stated that it anticipated that plaintiff would return to work on May 1, 2006. On May 1, 2006 plaintiff sent a letter of resignation to Alliance citing "a material change in the terms of [his] employment" as the cause of his decision, and he asked for severance payments from December 2005 to October 2006. (Modesti Aff. Ex. D at 1.) Alliance accepted the resignation, but stated that any severance payments would be made in accordance with the terms of the Plan, rather than the Second Letter.

Alliance has not paid plaintiff any severance.

## III. DISCUSSION

### A. Standard of Review

A cause of action will be dismissed for failure to state a claim under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). On a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are accepted as true and all favorable inferences must be drawn in favor of the plaintiff. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). In reviewing the sufficiency of a complaint at the pleading stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

### B. Claims Against Alliance and Nappi

Alliance and Nappi move to dismiss plaintiff's breach of contract and fraud claims, as well as his New York State Labor Law claim, on the ground that they are preempted because they arise out of alleged violations of an ERISA governed severance package.

Alliance and Nappi argue that the Second Letter incorporated into its terms the Plan. (Alliance Mem. 4.) Plaintiff argues that the Plan and the Second Letter are separate and distinct severance packages, and that it is the Second Letter's severance package that is applicable in this case.

Plaintiff's argument is based on how the term "material change in the terms of employment" was defined in the First and Second Letters, and how it was defined in the Plan. The definition of that phrase is critical in this case because it is that language that plaintiff cited in tendering his resignation, and it is upon the definition of that language in the Plan that Alliance relied in refusing to pay severance. Therefore, it must first be determined whether the severance provisions of the Second Letter and the Plan are the same or different.

Where "significant differences" exist between a company's existing severance plan and the promised benefits, it is appropriate to find that "the promised benefits were free-standing and were not premised in any way on the existing plan." Crews v. Gen. Am. Life Ins. Co., 274 F.3d 502, 505 (8th Cir. 2001); see Gresham v. Lumberman's Mut. Cas. Co., 404 F.3d 253, 259 (4th Cir. 2005) (finding that offer of severance in an employment offer letter was distinct from a corporate severance plan where the conditions for eligibility under each were different). A company's failure to explain that a promised severance benefit is

related to an existing severance plan may be proof that the two plans are different. See Crews, 274 F.3d at 505; Gresham, 404 F.3d at 259.

In the Plan, "material change in the terms employment" was a defined term. It was defined as a reduction in an employee's base rate of pay of 5%, but it excluded from that calculation a temporary lay-off.

The phrase appears in the references to severance in the purchase agreement, and the First and Second Letters without any subjective definition, despite the fact that all of these documents contained specifically defined terms. Under New York common law, a mere reduction in base pay constitutes a material change in the terms of employment. See Hanlon v. Mcfadden Publ'ns, 302 N.Y. 502, 505-06 (1951). Plaintiff was put on temporary lay-off status on December 16, 2005, and remained there until May 1, 2006. He was not paid his base salary for four and one-half months, or more than 25% of what he would be owed between the closing date of the sale and its first anniversary. Under the common law definition, plaintiff's temporary lay-off constitutes a material change in employment. See Hanlon, 302 N.Y. at 505-06.

Thus, the conditions for severance eligibility under the Second Letter and the Plan were materially different. See Gresham, 404 F.3d at 259. Under the Plan, plaintiff's temporary lay-off was not a "material change in the terms of employment" but under the Second Letter it was. Therefore, the severance packages described in the Plan and Second Letter are different.

Despite the different provisions, since the Second Letter did not specifically define the term "materiel change in the terms of employment," it must next be determined if the Second Letter nevertheless incorporated the Plan.

An employment agreement does not incorporate an existing benefit plan where that plan is not referred to in the employment agreement. See Wharton v. Duke Realty LLP, 467 F. Supp. 2d, 381, 389 (S.D.N.Y. 2006) (finding that plaintiff's employment agreement did not specifically reference a separate benefit plan, and therefore the benefit plan was not incorporated in the employment agreement).

In this case, the employment agreement memorialized in the Second Letter failed to make any reference to the Plan. See Wharton, 467 F. Supp. 2d at 389; Crews, 274 F.3d at 505.

Also, the timing of the First and Second Letters and the promulgation and execution of the Plan weighs heavily against Alliance and Nappi's argument that the Second Letter incorporated the Plan. The First Letter was dated October 17, 2005, and plaintiff executed it on October 24, 2005. By Alliance and Nappi's own admission, the Plan was promulgated on October 27, 2005 and not put into effect until November 1, 2005.[2]  Thus, it cannot be argued that the First Letter incorporated the Plan, as the Plan did not exist at the time the initial employment offer was made. While the Second Letter arrived after the supposed promulgation of the Plan, the language of the severance provision was identical to that included in the First Letter. It also arrived with an apologetic cover letter stating that the sole purpose of the letter was to correct a corporate error that had mistakenly caused the contract to be tendered by the wrong Alliance subsidiary. The cover letter did not state that the terms had materially been altered, or that they now incorporated by reference the newly promulgated Plan. In fact, the cover letter stated that the First and Second Letter were

---

[2] For demonstrative purposes only, this discussion includes facts supplied by defendant.

"identical." (Modesti Aff. Ex. B at 5.) Despite multiple opportunities afforded Alliance and Nappi to make explicit the incorporation of the Plan in the employment agreement, they failed to do so.

The continuing omission of terms in the letters incorporating or referencing the Plan is particularly instructive given the business sophistication of the defendants. Alliance and Nappi knew how to make the incorporation explicit. They did not do so. Given the experience of the defendants at drafting agreements, the failure to make the incorporation explicit points directly to the conclusion that they did not intend to incorporate the Plan in plaintiff's employment agreement.

Since, the severance package as presented in the Second Letter was materially different from the package described in the Plan, and because the Plan was not incorporated in the Second Letter, it must be treated as separate and distinct. See Crews, 274 F.3d at 505; Gresham, 404 F.3d at 259. The severance package applicable to the claims in this case is the package that is described in the Second Letter. Whether the Second Letter, which does not incorporate the Plan, is governed by ERISA is a question that has not been raised by Alliance and Nappi.

Therefore, Alliance and Nappi's motion to dismiss plaintiff's state law claims on the ground that they are preempted by ERISA must be denied.

Since none of plaintiff's claims invoke ERISA or any other federal constitutional or statutory provision, there are no claims over which the district court has original jurisdiction. A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c); see also Federman v. Empire Fire & Marine Ins. Co., 597 F.2d 798, 809 (2d Cir. 1979).

Because there is no federal cause of action in this case, it is appropriate to decline supplemental jurisdiction and remand this action to state court.

### C. Claims Against Sithe

Because this action will be remanded to state court, Sithe's motion to dismiss, which is based on state law, will also be denied, without prejudice.

## IV. CONCLUSION

The severance package presented in the Second Letter is the package applicable to plaintiff's claims. No claim is made that the Second Letter's severance package is an ERISA plan. Therefore, Alliance and Nappi's motion to dismiss will be denied. Because there are no federal causes of action that remain, supplemental jurisdiction is declined, and defendant Sithe's motion to dismiss plaintiff's state law claims will be denied, without prejudice.

Therefore, it is

ORDERED that

1. Defendants Alliance and Nappi's motion to dismiss is DENIED;

2. Defendant Sithe's motion to dismiss is DENIED, without prejudice; and

3. This action is REMANDED to New York State Supreme Court, Oneida County.

The Clerk is directed to transfer the case accordingly and close the file.

IT IS SO ORDERED.

Dated: May 3, 2007
       Utica, New York.

United States District Judge